Filed 7/7/26  P. v. High CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EILEEN HIGH,<br><br>    Defendant and Appellant. | D085745<br><br><br>(Super. Ct. No. SCD301998) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene Sevidal, Assistant Attorney General, Eric A. Swenson and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Eileen High of three counts of theft of more than $950 from an elder (Pen. Code,[1] § 368, subd. (d)), after she stole money from her mother's bank account. The trial court placed her on three years formal probation. On appeal, she contends her convictions are not supported by substantial evidence and the trial court failed to properly instruct the jury on the elements of the charged offense. We find no error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

High lived in Oceanside with her elderly mother, Donnis, for several years. After Donnis moved into a nursing home, she gave High access to her bank account to pay some bills, such as paying Donnis's monthly rent via Zelle.[2] It was not a joint account, and Donnis did not make High a co-signer. Donnis did not give High permission to take money for herself or to pay her own bills.

On February 1, 2023, High attempted to make two transfers from Donnis's account to herself via Zelle, but the bank denied the transactions. On February 3, 2023, High successfully transferred $1,000 from Donnis's account to herself via Zelle. Donnis did not give High consent to transfer the money. On June 2, High transferred $1,500 from Donnis's account to herself via Zelle without Donnis's authorization. Then on July 5, High transferred an additional $1,000 from Donnis's account to herself via Zelle without

---

[1] Further unspecified statutory references are to the Penal Code.

[2] Zelle is a digital payments network that allows users to send and receive money instantly between bank accounts. (See *Baldwin Hackett & Meeks, Inc. v. Early Warning Servs., LLC* (2025) 153 F.4th 656, 659, fn. 3.)

Donnis's authorization. The money from the Zelle transfers was all deposited into High's bank account.

Meanwhile, Donnis attempted to access her bank account online, but the password had been changed. She contacted the bank and set a new password. Twice more she received notifications that someone had changed her password. Ultimately, Donnis's social worker took her to the bank where she froze her account. Then they reported the unauthorized account activity to police.

High testified that Donnis could not have money accumulate in her bank account because she was getting financial assistance. So occasionally High transferred money from Donnis's account to her own. High would use that money to take care of Donnis and would offer to give the money back at any time if Donnis asked.

High denied knowledge of the transfers from Donnis's account to herself in June and July 2023 and explained her own bank account was hacked at that time. She admitted making one transfer from Donnis's account to herself in February 2023 to pay Donnis's rent for the entire year. When asked why she would need to transfer money to herself to pay Donnis's rent when Donnis's bank records showed rent payments were made directly to the landlady, High theorized that the landlady was taking double rent payments.

## DISCUSSION

### I.

### *High's Convictions Are Supported by Substantial Evidence*

The People's theory of liability against High was theft by larceny. High contends the evidence presented at trial is insufficient to support her convictions under this theory.

3

When considering a challenge to the sufficiency of the evidence to support a conviction, we view the record in the light most favorable to the judgment to determine whether it contains substantial evidence so that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Collins* (2025) 17 Cal.5th 293, 307 ; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

Under section 368, subdivision (d)(1), a noncaretaker "who violates any provision of law proscribing theft" of more than $950 from an elder is guilty of a felony.  "Theft, in turn, is defined in section 484, subdivision (a) . . . . Section 484 consolidates the offenses of larceny, theft by false pretenses, and embezzlement into the single crime of 'theft.' " (*People v. Kaufman* (2017) 17 Cal.App.5th 370, 378–379 (*Kaufman*).)  "Although the crimes were consolidated under the general crime of 'theft,' the underlying elements did not change; 'to prove its commission, the evidence must establish that the property was stolen by larceny, false pretenses, or embezzlement.' " (*Id.* at p. 379.)

Theft by larceny requires proof that the defendant committed a trespass by taking property owned by another without the owner's consent and with the intent to deprive the owner of the property permanently, and "moved the property, even a small distance, and kept it for any period of time, however brief."  (CALCRIM No. 1800.)  "The act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally or the taker has a legal right to take the property." (*People v. Davis* (1998) 19 Cal.4th 301, 305.)

High argues she did not "move" Donnis's money because "[m]oney was transferred electronically, but nothing was physically carried."  She also argues she did not commit a trespassory taking because Donnis consented to

4

High accessing her bank account to make certain transactions and, thus, High had possession of all the funds in the account.

First, High did not have to physically move money from Donnis to herself for her conduct to satisfy the asportation element of larceny. For generations, larceny charges have been premised on the transfer of funds via bank draft without the physical movement of cash. (See, e.g., *Kaufman, supra*, 17 Cal.App.5th at pp. 375, 382, 387 [asportation element of larceny satisfied where defendant misappropriated funds by accepting cashier's check from third party for funds that were owed to the victim]; *People v. Burns* (1911) 16 Cal.App. 416, 418–419 [larceny charge premised on defendant presenting bank draft purportedly signed by the victim, which caused bank to deposit funds from victim's account into account controlled by defendant].) We see no reason for a different rule to apply to the transfer of funds via digital payments between bank accounts.

Second, the evidence shows Donnis did not unconditionally consent to High's accessing, possessing, or taking all the money in her bank account, or to High making the specific transfers at issue here. It is undisputed that Donnis gave High limited, conditional access to certain funds in her bank account for the restricted purpose of paying specific bills. But Donnis did not make High a co-owner or a co-signer on the account. And she testified that she did not authorize High to take money from her account for High's personal use nor consent to the transfers underlying the convictions here. Although High testified at trial that she did not take money from Donnis without consent, the jury rejected her testimony. And on appellate review for substantial evidence, we do not reweigh the evidence, assess witness credibility, or choose between competing inferences. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) When viewing the conflicting testimony in the

5

light most favorable to the judgment, as we must, we find the evidence is sufficient for a rational trier of fact to have found High guilty beyond a reasonable doubt of theft from an elder under a theory of larceny.[3]

## II.

### *The Trial Court Did Not Commit Instructional Error*

The trial court instructed the jury on the elements of theft from an elder under a theory of theft by larceny. It did not instruct on any other theory of theft liability. High contends that the court failed to properly instruct the jury on the elements of the offense charged because it should have instructed on theft by embezzlement instead of larceny.[4]

We review instructional error claims de novo. (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 902.) " 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general

---

[3]    Because we find substantial evidence supported High's convictions based on the bank transfers, we do not address her argument as to whether a theft conviction could have been sustained based on her taking Donnis's other property.

[4]    The Attorney General argues High forfeited this claim by failing to request instructions on a theory of embezzlement at trial. High argues the forfeiture doctrine does not apply because the trial court had a sua sponte duty to instruct the jury on every element of the offense. "[F]ailure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are affected." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Because "ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice" (*People v. Franco* (2009) 180 Cal.App.4th 713, 719 [cleaned up]), we exercise our discretion to consider the argument on appeal.

6

principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*) [citations omitted].) " 'That obligation includes instructions on all of the elements of a charged offense,' and on recognized 'defenses . . . and on the relationship of these defenses to the elements of the charged offense.' " (*People v. Rubalcava* (2000) 23 Cal.4th 322, 334 [citation omitted].)

"Omitted element error is generally subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18." (*People v. Oyler* (2025) 17 Cal.5th 756, 838 (*Oyler*).) "Under this analysis, '[w]e must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error' in omitting a necessary element of the offense."[5] (*Ibid.*)

Again, the People charged High under a theory of theft by larceny. And, as we have explained, substantial evidence supported this theory of liability. The trial court was required to instruct the jury on the elements of this theory because it was relevant to the issues raised by the evidence and necessary for the jury's understanding of the case. (*Smith, supra*, 57 Cal.4th at p. 239.) Thus, the court was not permitted to omit larceny instructions in favor of instructions on an embezzlement theory, as High suggests. Notably,

---

[5] The Attorney General suggests we should not apply the *Chapman* standard because the trial court properly instructed the jury on the elements of the charged offense. Nevertheless, the Attorney General argues any error was harmless even under *Chapman*. We agree, but we also note that for the reasons we shall discuss in finding the error harmless under *Chapman*, we also would find the error harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818 [error harmless where it is not reasonably probable defendant would have obtained a more favorable result absent the error].

High does not contend the trial court failed to adequately instruct the jury as to every element required under the larceny theory. Accordingly, the trial court fulfilled its duty to instruct on the elements of the crime, as it was charged. (See *Kaufman, supra*, 17 Cal.App.5th at p. 390 [finding no error where trial court instructed on the prosecution's theory of liability rather than alternate theory, and noting "it is the prosecutor's role to decide whom to charge and what charges to bring" and "[w]hen the prosecution files an accusatory pleading, it assumes the obligation to prove *only* the elements of the stated charge and any lesser offense necessarily included therein"].)

But even if we could find that the court should have instructed the jury on the theory of theft by embezzlement in addition to larceny, the error was harmless under either the *Chapman* or *Watson* standards. As we have explained, the evidence supported the theory of theft by larceny. Given the state of the evidence, " 'it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error.' " (*Oyler, supra,* 17 Cal.5th at p. 838.).

## DISPOSITION

The judgment is affirmed.


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.